UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-01764-WYD

ROSE M. ANCONA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for Supplemental Security Income Benefits ["SSI"]. For the reasons stated below, this case is reversed and remanded to the Commissioner for further factfinding.

I.    BACKGROUND

Plaintiff was born on June 18, 1952, and was 55 years old on the date of onset of October 26, 2007 and 56 years old at the time of her hearing before the administrative law judge ["ALJ"]. She graduated high school and received some training as a hairdresser. (Administrative Record ["AR"] 163.) Plaintiff's past relevant work was as an animal breeder, home attendant, house keeper and dishwasher. (*Id.* 183, 61.)

Plaintiff filed a claim for SSI on August 14, 2007, due to neck problems. (AR 45, 57, 60.) She originally alleged a disability onset date of March 13, 2007. (*Id.*) Before

testimony was taken at the hearing on October 21, 2008, Plaintiff amended the date of onset to October 26, 2007. (*Id.* 60.) ALJ Paul Keohane presided over the hearing. (*Id.* 156-58.) At the hearing, the vocational officer testified in response to three different hypothetical questions that Plaintiff could not perform her past relevant work. (*Id.* 183-85.) Each hypothetical question provided limitations that would place Plaintiff in the light exertional category or lower. (*Id.*) The hearing decision was, however, signed by a different ALJ, ALJ Kathryn D. Burgehardt, on behalf of ALJ Keohane who according to the Commissioner had passed away at the time of the decision. (*Id.* 20.)

At step one of the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended date of onset of October 26, 2007. (AR 16, Finding 1.) She next found that Plaintiff had medically determinable impairments of degenerative disc disease of the cervical spine and myofascial pain syndrome. (*Id.*, Finding 2.) At step two, however, the ALJ found that Plaintiff did not have a severe impairment. (*Id.* 16, Finding 3.) Thus, the ALJ stopped the sequential evaluation process at step two and found that Plaintiff was not disabled. (*Id.* 20.) Accordingly, she did not consider any of the impairments in the three hypothetical questions stated by ALJ Keohane at the hearing.

Plaintiff appealed to the Appeals Council and her request for review was denied. (AR 5-9.) This appeal followed. The ALJ's decision became the "final decision", permitting judicial review of the decision. 42 U.S.C. § 405(g).

Plaintiff claims that the ALJ failed to properly weigh the medical opinion of consultative examiner Velma Campbell, M.D., as well as opinions from treating source

Kali Mae Mendoza-Werner, PA-C and the records of the Arkansas Valley Regional Medical Center Hospital ["AVRMC"]. She also argues that the ALJ's finding of no severe impairments at step two was not supported by substantial evidence and that the ALJ failed to fully develop the record in regard to her physical limitations for the entire 12 month durational requirement. Accordingly, Plaintiff asserts that this case must be reversed and remanded.

The Commissioner maintains in response that substantial evidence supports the ALJ's determination that Plaintiff was not disabled because she did not have a severe impairment. He further argues that the ALJ did not err in evaluating Dr. Campbell's opinion and the other medical evidence, and that the ALJ adequately developed the record. Accordingly, the Commissioner asserts that the ALJ's decision should be affirmed.

II.  ANALYSIS

    A.  Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

  B. <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

I first address the consultative medical opinion of Dr. Velma Campbell. She examined Plaintiff in October 2007 and ordered and reviewed a radiology report of a cervical spine x-ray. (AR 90.) Dr. Campbell diagnosed Plaintiff with chronic neck and shoulder pain with mild multilevel spondylosis; one level left foraminal stenosis; chronic trapezius muscle pain, referred to the shoulders; headache, recurring, associated with neck muscle tension; chronic low back pain associated with referred pain to the lower extremities; and psychological factors associated with depression, anxiety, and pain disorder. (*Id.*) Dr. Campbell opined that Plaintiff experienced the following physical limitations: Lifting and carrying limited to 20 pounds for less than 3 hours daily; Standing and walking limited to less than 6 hours a day; Reaching out from the body and overhead limited to less than 2 hours a day; Postural activities such as bending, stooping, squatting and kneeling are limited to less than 3 hours a day; and Plaintiff should be allowed to change position to avoid stiffness and increased neck and back pain. (*Id.* 91.)

Dr. Campbell's limitations were presented to the vocational expert at the hearing in the first hypothetical question. (AR 183.) The expert testified that these limitations

would preclude Plaintiff's past relevant work. (*Id.* 184.) Even more importantly, if these limitations were accepted by the ALJ, Plaintiff would have been found disabled under Grid Rule 202.06 (as Plaintiff was of advanced age at 56 and her limitations were at or less than the light exertional level). The ALJ chose not to accept the limitations stated by Dr. Campbell or the fact that the limitations she imposed would obviously make Plaintiff's impairments severe within the meaning of the Social Security Act. Further, the ALJ ignored some of Dr. Campbell's diagnoses. I find that the ALJ did not properly weigh Dr. Campbell's opinion and that the reasons given to discount her opinion are not valid.

First, the ALJ did not actually state what, if any, weight she gave to the opinion of Dr. Campbell. She also did not weigh Dr. Campbell's opinion using the relevant factors set out in 20 C.F.R. § 416.927(d). This alone was error. *Carpenter v. Chater*, 537 F.3d 1264, 1270 (10th Cir. 2008) (the ALJ erred in not considering and weighing doctor's opinion from a one time evaluation in light of the other record evidence and the factors set out in the regulations) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (the ALJ's reasons must be sufficiently specific to make clear to any subsequent reviewers the weight given to the medical opinion, and the reasons for that weight). One very important factor that the ALJ ignored is the fact that Dr. Campbell is a Board Certified Specialist in Occupational Medicine and Family Practice. (AR 91.) This occupational specialty provides Dr. Campbell with more expertise than the average treating source in evaluating a patient such as Plaintiff for work limitations.

While not entirely clear as discussed above, it appears that the ALJ rejected the entirety of Dr. Campbell's assessment and opinion of Plaintiff's impairments and the limitations caused by same. I find that the reasons given by the ALJ for rejecting Dr. Campbell's opinion are not valid.

The ALJ first cited to the x-ray imaging results as interpreted by Dr. Campbell which showed only "mild spondylosis". (AR 17-18.)[1] The ALJ also cited to later x-ray results and other imaging tests to support her findings. (*Id.* 18-19.) To the extent that the ALJ interpreted these x-ray/imaging test results to support her finding that there was little objective evidence to support Dr. Campbell's opinion and that Plaintiff's cervical impairment was only mild, this was an improper lay judgment of the ALJ. The ALJ is not trained to read x-ray and other medical test results, and certainly cannot substitute her judgment about results from such tests for that of Dr. Campbell, an orthopedic specialist. *See Anderson v. Astrue*, No. 05-4305, 2009 WL 886237, at *9 (10th Cir. 2009) (doctor's interpretation of medical tests to indicate mild or moderate issues "do not necessarily mean that Mr. Andersen's overall condition is 'mild' or 'moderate'").

Further, there is no medical opinion or evidence that opines a mild degenerative cervical change or similar results from the x-ray or imaging tests equates to only mild pain or a mild impairment as found by the ALJ. The Tenth Circuit is clear that an ALJ may reject a physician's opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion".

---

[1] Dr. Campbell actually noted that the radiology report of the cervical spine x-ray showed "Mild disc space narrowing at C5-6", "Anterior osteophytes C3-6", "Uncovertebral degenerative change and facet arthropathy C3-6" and "Left neural foraminal narrowing at left but level not mentioned". (*Id.* 90.)

*McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (internal citation omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) (the ALJ overstepped his bounds when he substituted his medical judgment for that of the physician when he determined that the test results were not adequate to support the diagnosis).

The ALJ also made improper lay judgments about the objective findings of Dr. Campbell which the ALJ found did "not provide significant support for the existence of any severe musculoskeletal impairment." (AR 18.) For example, the ALJ noted that Dr. Campbell found no neck spasms, intact sensation, normal grip strength, no evidence of joint deformity or swelling, normal range of motion, and other such findings. (*Id.*) In so finding, the ALJ downplayed objective findings which did support Dr. Campbell's findings, including the fact that Plaintiff exhibited pain upon range of motion testing in her shoulders, reduced strength in her deltoids, pain to palpation at L3 and reduced range of motion in the lumbar spine. (*Id.*) And again, the ALJ cannot substitute her opinion about these objective findings for the medical provider.

The ALJ also ignored the evidence from other providers that supported a finding of severity of Plaintiff's impairments and cited only to portions of the record which she felt supported her decision. This was improper, as the ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to h[er] position while ignoring other evidence.'" *Carpenter*, 537 F.3d at 1265 (quotation omitted); *see also Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2005) (the ALJ cannot ignore evidence which does not support her decision).

For example, the ALJ recited statements found in the reports of Kali Mae Mendoza-Werner, PA-C (hereinafter "the PA-C"). (AR 18.) The ALJ also recited statements found in the AVRMC hospital records from Plaintiff's inpatient visit for pneumonia. (*Id.* 19.) But the ALJ ignored findings in those reports and records that lent support to Dr. Campbell's opinions. I first address the reports of the PA-C. The ALJ relied on a report from the PA-C issued <u>before</u> the amended date of onset of the disability where she found that Plaintiff was capable of work to support her finding that Plaintiff's impairments were not severe. (*Id.* 18.) However, this report was issued without the benefit of x-rays or the later assessment of Dr. Campbell, an orthopedic specialist.[2] Indeed, the PA-C noted in the August 17, 2004 visit before Plaintiff's date of onset that she did not feel comfortable claiming that Plaintiff was disabled because there "has been absolutely no formal workup on this patient. . . ." (*Id.* 132.)

On December 20, 2007, after the date of onset, the PA-C agreed with Dr. Campbell's assessment of myofascial etiology with respect to Plaintiff's chronic neck pain. (*Id.* 125.) She did not state any disagreement with Dr. Campbell's other findings. To the extent that the record was unclear regarding the PA-C's opinion as to Plaintiff's impairments after reviewing Dr. Campbell's report, the ALJ should have contacted the PA-C to determine this issue. *McGoffin*, 288 F.3d at 1252 (citing 20 C.F.R. § 404.1512(e)(1) (2001)). That regulation states in pertinent part, "[w]hen the medical evidence we receive from your treating physician . . . is inadequate for us to determine

---

[2] The same is true as to the Med-9 report completed by the PA-C in September 2007 stating that Plaintiff did not have a disabling impairment. (*Id.* 87-88.)

-8-

whether you are disabled, we will need additional information to reach a determination or a decision. . . .We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information. . . ."³ *Id.* While the Commissioner asserts that the PA-C never imposed any functional restrictions on Plaintiff, there is no evidence that she was ever asked to do so.

Further, the PA-C assessed chronic back/neck pain and osteoarthritis, chronic headaches with a notation that migraines should be considered, and requested back x-rays. (AR 132 and 125.)⁴ She also prescribed pain medications for Plaintiff, including Darvacet, Elavil and Tramadol. (*Id.* 125, 129.) She stated in December 2007, "I do not know that she (Plaintiff) will ever be at a painfree (sic) state but hopefully could minimize her pain enough to be functional and employable." (*Id.* 126.) From this, it can be inferred that the PA-C believed Plaintiff's condition reduced her functional ability and her employability. All of these findings lend support to Dr. Campbell's assessment of Plaintiff's impairments as well as Plaintiff's complaints of pain.

Although a PA-C is not an acceptable medical source, they are considered an "other source". See 20 C.F.R. § 416.913(a)(d). As an "other source", a PA-C cannot be used to establish a medically determinable impairment, but they may be used to show

---

³ The ALJ also stated that the PA-C noted that Plaintiff did not apply for a health program for low-income clients. (*Id.* 18, 129.) But the ALJ failed to note that Plaintiff did apply and was approved at a later time for that program. (*See id.* 123-note from clinic's case manager.)

⁴ Financial problems prevented Plaintiff from obtaining the x-rays and the PA-C noted, "We are restricted financially with the patient. . . ." (*Id.* 125, 129.)

the severity of an impairment. *Id.* A PA-C's opinion, just like that of an acceptable medical source, should be weighed under the legal standard set out in 20 C.F.R. §416.927(d). *See* SSR 06-03p, 2006 WL 2329939, at *5 (2006). The ALJ erred in not stating what weight she gave to the PA-C's opinions and appeared not to properly weigh the PA-C's opinions and findings under the applicable standard.

The ALJ's decision also failed to include evidence from the AVRMC hospital reports that supported Dr. Campbell's opinions. The hospital diagnosed "acute exacerbation of chronic neck pain" and "[t]ension headache secondary to muscle spasm", noting from x-rays that Plaintiff has "degenerative joint disease in the cervical spine" as confirmed by x-rays. (AR 139, 144.) The hospital gave Plaintiff Tramadol, Flexeril and ibuprofen for neck pain, and stated that Plaintiff should continue treatments for arthritis. (*Id.* 139.) It also prescribed pain management with Tramadol and morphine as needed for neck pain. (*Id.* 144) The records noted "[t]enderness to Claimant's paraspinous muscles and upper shoulder" (*id.* 143) and stated that the hospital would arrange outpatient physical therapy for Plaintiff's neck pain. (*Id.* 140.) The hospital discharged Plaintiff with medications for neck pain and headache, including Flexeril, Ultram, and Ibuprofen. (*Id.*) Again, all of these support Dr. Campbell's assessment as well as Plaintiff's complaints of pain and did not appear to be weighed by the ALJ.

The only thing referenced by the ALJ from the AVRMC hospital records was that while the "imaging results indicated some evidence of cervical degenerative disk disease", the attending doctor stated that Plaintiff's cervical instability was not felt to be of a degree that would be the cause of any concern. (AR 19.) The ALJ ignored the

-10-

fact, however, that the doctor found that the imaging results showed degenerative *joint* disease as well as degenerative disk disease. The doctor's statement about instability appears to be referring to the 2-mm listhesis of C4-C5 in connection with possible degenerative disk disease, not degenerative joint disease. (*Id.* 139). Further, I find that it would not be clear to a lay person how the doctor's statement that this was not "felt to be a large enough degree of instability to be concerning at this time" (*id.*) impacted that doctor's overall assessment of Plaintiff's condition or, more importantly, how it detracted from or impacted Dr. Campbell's opinions. Again, the ALJ was making an improper lay judgment about what this statement of the attending doctor meant.

The ALJ ultimately concluded that "the objective medical evidence simply does not support the existence of any severe musculoskeletal or neurological impairment or combination of impairments which could reasonably be expected to result in more than minimal functional limitations for the required durational period of twelve continuous months." (AR 19.) In so finding, she gave "great weight to the conclusions of the treating physician [Jason Morgenson, M.D.], to the effect that the claimant's symptoms and condition were not of sufficient severity to preclude work for more than six to eight months (Exhibits 6F and 8F.)" (*Id.*) The ALJ found that this was consistent with the physician's treatment records, the repeated imaging results, and the other evidence of record. (*Id.*) Again, I find problems with the ALJ's analysis.

Dr. Morgenson assessed myofascial pain syndrome, recurrent headaches and panic attacks. (AR 109, 121-22.) Dr. Morgenson found from his examination of Plaintiff in January 2008 that she was disabled, and that the condition would be expected to

-11-

preclude her from working for six to eight months. (*Id.* 108-09.) The ALJ improperly assumed that at the end of this 8-month period Plaintiff would no longer have significant limitations. However, Dr. Morgenson never gave such an opinion. In other words, he did not examine Plaintiff after the 8-month period and opine she was no longer unable to work at any job, nor did any other medical expert. The file is void of any medical opinion supporting the ALJ's assumption.

More importantly, Dr. Morgenson did not provide a prognosis as to the expected physical limitations of the Plaintiff at the end of eight months. Indeed, the doctor did not render *any* opinion with respect to the severity of Plaintiff's impairments or restrictions caused by same; he estimated only that Plaintiff would be unable to perform any job during that time period. A severe impairment at step two does not necessarily mean that someone cannot work at any job. This distinction is critical. Plaintiff was not required at step two to prove she could not work at any job, simply that she had a severe impairment or more than minimal limitations in the ability to do basic work activities. Common sense dictates that if Plaintiff is unable to perform *any* job during the eight month period it is likely she will continue to have some significant physical limitations after that period.

In fact, Dr. Morgenson examined Plaintiff again on January 6, 2009, less than one year after the above report. (AR 153-54.) From this examination, Dr. Morgenson provided a Med-9 report which opined Plaintiff has been or will be disabled to the extent that she is unable to work at any job for six or more months. (*Id.*) Later in the report Dr. Morgenson provided a prognosis that Plaintiff would be unable to work at any job for

12 months or longer. Thus, Dr. Morgenson obviously felt that Plaintiff's impairments were still so disabling a year later that she was precluded from working an additional twelve months. The ALJ improperly ignored this evidence, which fully supported (and indeed exceeds) the limitations stated by Dr. Campbell (since she did not preclude Plaintiff from any job).

While there is a four month gap in between the end of the eight month period in 2008 and the visit to Dr. Morgenson in January 2009, I agree with Plaintiff that it defies belief that she was completely disabled from performing work for eight months, then recovered with <u>no significant limitations</u> for four months, and then became completely disabled and unable to work at any job again for 12 months or longer. At the very least, the ALJ should have contacted Dr. Morgenson to determine his opinion about that four month period and whether Plaintiff was disabled or restricted during that time. The ALJ's finding that Plaintiff's impairments were not severe after that initial eight month period of disability is mere speculation.

Finally as to Dr. Morgenson, the ALJ noted that Plaintiff saw him in June 2008 complaining of headaches and that he found Plaintiff exhibited some tenderness in the cervical and occipital area, "although these symptoms were confined mostly to the muscles." (AR 19.) The ALJ stated that Dr. Morgenson further noted that Plaintiff "exhibited normal cranial nerves, normal strength in the extremities, and normal gait." (*Id.*) The ALJ failed, however, to explain why those findings from Dr. Morgenson in any detract from Dr. Campbell's opinions or mean that Plaintiff's impairments are not severe. Again, this was an improper lay judgment by the ALJ. Further, the ALJ ignored

other opinions of Dr. Morgenson's at that appointment which are supportive of Dr. Campbell's opinions and Plaintiff's complaints of severe impairments, including a diagnosis of inflammation of the neck, arthritis and spondylolisthesis and the recommendation of a soft neck collar and pain medication. (*Id.* 117.)

From the foregoing, it is apparent that the ALJ's finding that the objective medical evidence in the record did not support Dr. Campbell's opinion appears to be based on improper lay judgments and/or a skewed assessment of the evidence. The ALJ did not properly weigh the evidence, including evidence from treating physician Dr. Morgenson which lends support to Dr. Campbell's opinions. I also note that the ALJ failed to explain why she did not give Dr. Morgenson's opinions controlling weight, as compared to "great weight", and why she discounted all of the findings of Dr. Morgenson that support Plaintiff's complaints. The failure of the ALJ to state in the decision a sufficient basis to determine that correct legal standards were applied is grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (emphasis added).

The Commissioner argues, however, that Plaintiff's testimony does not support Dr. Campbell's opinions regarding limitations on Plaintiff's ability to work. Although the ALJ noted some of Plaintiff's testimony, the ALJ did not compare it to Dr. Campbell's opinions. The ALJ and Commissioner fail to acknowledge Plaintiff's testimony about her impairments that is consistent with those imposed by Dr. Campbell. Plaintiff testified she cannot lift over 20 pounds. (AR 170.) Dr. Campbell limited Plaintiff to lifting 20 pounds less than 3 hours a day. (*Id.* 91). Plaintiff has trouble combing her hair and taking care of her hair and experiences numbness in both shoulders with reaching over

her shoulders. (*Id.* 169-170.) Dr. Campbell limited Plaintiff to less than 2 hours a day reaching overhead. (*Id.* 91). Plaintiff stated that she could walk only 5 or 6 hours in a day if she had a job. (*Id.* 168.) Dr. Campbell limited the Plaintiff to walking and standing less than 6 hours a day. (*Id.* 91.) Finally, Plaintiff testified that she would miss approximately 15 days of work in a month due to her pain (*id.* 179), which is consistent with a finding of significant limitations on Plaintiff's ability to work as found by Dr. Campbell.

I also note that the ALJ relied on Plaintiff's activities to discount Dr. Campbell's findings and the other medical evidence in the record which support her complaints. (AR 19-20.) However, again, the ALJ was selective in citing to her evidence. For example, the ALJ stated that Plaintiff testified that she feels capable of performing work as a dog breeder, although she would just be limited to caring for the puppies. (*Id.* 19.) Plaintiff actually testified, however, that she could *not* breed dogs but could probably help with puppies in exposing them to human contact, playing with them a little and bathing them. (*Id.* 177.) She could hold them on the couch but would not bend over in a constant position or kneel in their pen. (*Id.*) Further, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citing *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987)); *see also Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987).

Because I find that the ALJ did not properly weigh the evidence in this case, the findings at step two were flawed. Indeed, there appears to be little to no medical

-15-

evidence that supports a finding that Plaintiff's impairments were "slight" or had only a "'minimal effect" on her ability to work, as required for a finding that the impairments were not severe. *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. Dec. 8, 2004). Further, all three hypothetical questions noted by ALJ Keohane in the hearing from the medical evidence assessed work restrictions caused by Plaintiff's impairments. The ALJ who signed the order appeared to ignore that.

The Tenth Circuit has made clear that "case law prescribes a very limited role for step two analysis." *Lee*, 2004 WL 2810224, at *2. "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id.* (quotation omitted). "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004)). "In addition, if after considering all of the evidence the [ALJ] is unable to determine clearly the effect of an impairment(s) on the individual's ability to do basic work activities, the [ALJ] must continue to follow the sequential evaluation process until a determination or decision about disability can be reached. SSR 96-3p, 1996 WL 374181, at *2 (1996).

I also find that the ALJ erred at step two in ignoring and/or not considering whether a number of additional impairments found by the medical providers are severe. Such impairments include neck, shoulder and back pain, osteoarthritis in Plaintiff's neck, degenerative joint disease, and chronic headaches. On remand, the ALJ must properly

assess these impairments, keeping in mind that even if they are found not to be severe, they must be taken into account in assessing Plaintiff's RFC. *Mushero v. Astrue*, No. 09-5164, 2010 WL 2530728, at *2 (10th Cir. June 24, 2010).

III. CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 29, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge